1. The ground of the motion for new trial excepting to the charge of the court on the burden of proof is without merit.
2. The evidence authorized the finding that the note secured by the bill of sale foreclosed by the plaintiffs was without consideration, and that the plaintiffs, the transferees, were not bona fide purchasers for value.
 DECIDED JANUARY 20, 1941. REHEARING DENIED MARCH 26, 1941.
W. E. Weeks and C. A. Weeks foreclosed a bill of sale against A. C. McGahee. The bill of sale recited that McGahee was indebted to the Bank of Stapleton in a considerable sum as evidenced by two promissory notes dated March 27, 1939, one due September 15, 1939, for $1038.55, and one due September 25, 1939, for $1866; and that the bill of sale was executed to secure these notes. The bill of sale was transferred to W. E. and C. A. Weeks on October 16, 1939, together with all rights therein and title to the property conveyed. McGahee filed an affidavit of illegality, in which he alleged that the levy was proceeding illegally in that the note dated March 27, 1939, and due September 25, 1939, for $1866, was without consideration, because the Bank of Stapleton did not furnish any consideration for the execution thereof, and that the plaintiffs took an assignment of the bill of sale with such knowledge, and because the other note described in the bill of sale had been paid to the bank. Before the introduction of any evidence, McGahee admitted a prima facie case and assumed the burden of proof, for the purpose of securing the opening and concluding arguments. He filed the following amendment to his affidavit of illegality: "The note given by the defendant for $1866, described in the foreclosed bill of sale, was given upon the following conditions: 1. The present plaintiffs represented to the defendant that the Bank of Stapleton had agreed to take up the three old notes owed by the defendant to C. A. and W. E. Weeks, as follows, if the defendant executed said note and the bill of sale now being foreclosed: note dated July 27, 1936, for $100, to W. E. Weeks, due on demand pd. $110; note dated April 28, 1936, for $1081, to W. E. Weeks, due on 9/15/36. pd. down to $450 on that date; note dated May 22, 1937, for $1000, to C. A. Weeks. 2. This defendant acted upon said statement, and in good faith believed said representation to him, and executed the $1866 note and the bill of sale securing it. The *Page 584 
notes that the Bank of Stapleton were to pay off were never paid. This defendant now alleges that it was never the intention of said Bank of Stapleton, the payee of said note, to pay off the former notes of C. A. Weeks and W. E. Weeks, but it was a scheme on the part of the present plaintiffs to attempt to secure extra security for said old notes; and for this reason said note and bill of sale is void.
3. This defendant says, while the note for $1866 was intended to represent the indebtedness on the three old notes above described, there is usury or a greater rate of interest than eight per cent. due thereon. The proper amount due on said old notes should be $1733 instead of $1866."
Near the conclusion of the trial the defendant offered the amendment next above set forth. Whereupon counsel for the plaintiff stated to the court, "Now, if your honor please, if this amendment is to be allowed by the court, I do not think that the defendant would be entitled to the opening and concluding argument." The motion for new trial recites that this statement was made by way of objection to the allowance of the amendment, and was so understood by the court. Before a ruling was made on the allowance of the amendment counsel for the defendant stated to the court that he was no longer contending for the opening and concluding argument. At the close of the evidence the court stated that the plaintiffs were entitled to the opening and concluding argument. Presumably the plaintiffs had the opening and concluding arguments. The court charged the jury that the burden of proof was on the plaintiffs. It was agreed between counsel for both sides that the correct amount due would be the principal and interest on the old notes held by the plaintiffs, according to a correct calculation as made by the court and jury.
The defendant testified: "At the time when I executed the notes and bill of sale to the Bank of Stapleton, dated March 27, 1939, this being the bill of sale transferred by the Bank of Stapleton to the plaintiffs in this case and foreclosed by them, this was done under the following circumstances: Mr. W. E. Weeks came to me and told me that he could arrange with the Bank of Stapleton to lend me $1038.55 for the purpose of financing my 1939 crop, provided I would execute to the Bank of Stapleton a bill of sale on my mules and crop, and the other personal property described in the bill of sale, to secure not only the $1038.55 the bank would let me have, *Page 585 
but to secure the amount I owed W. E. Weeks and C. A. Weeks on prior indebtedness. I then owed W. E. Weeks a note for $1081, dated April 28, 1936, due September 15, 1936, with interest from maturity at 8 per cent. per annum, with a credit of $600 paid September 16, 1936. I also owed Mr. C. A. Weeks a note for $1000, dated May, 22, 1937, due September 15, 1937, with interest from date at 8 per cent. per annum. These notes covered the amount which I owed W. E. and C. A. Weeks, which he referred to. He stated that he would get the bank to take up my indebtedness to him and C. A. Weeks. I agreed to his proposal, and later went to the Bank of Stapleton to close the transaction. I signed a note to the Bank of Stapleton for $1038.55, dated March 27, 1939, due September 15, 1939, with interest from maturity at 8 per cent. per annum. I also signed a note for $1866, payable to the Bank of Stapleton, dated March 27, 1939, due September 25, 1939, with interest from maturity at 8 per cent. per annum. I also signed the bill of sale foreclosed in this case. securing the said two notes to the Bank of Stapleton, dated March 27, 1939, covering my 1939 crops, mules, and other personal property described therein. I got the money for the $1038.55 note, and I paid the same on October 12, 1939, by draft on Lyon 
Lyon, Augusta. Georgia. I asked Mr. Kilgore, the cashier of the Bank of Stapleton, if Mr. Weeks left the two notes I owed W. E. and C. A. Weeks, above referred to, with him. He said he did not. I later went to Mr. W. E. Weeks and asked if I was not entitled to these two order [older] notes, and he gave me no reply. Later I asked him again about it, and he told me that they were just lying there and didn't amount to anything against me. At the time I executed to W. E. Weeks the note referred to, for $1081, dated April 28, 1936, I also executed to him a bill of sale on my mules and implements, the same personal property described in the bill of sale to the Bank of Stapleton, except that the latter bill of sale also included my 1939 crops. The note for $1866 which I executed to the Bank of Stapleton was supposed to represent the amount of principal and interest due on the two notes held by W. E. Weeks and C. A. Weeks, above referred to, with 8 per cent. interest. The amount of the $1866 note is more than this amount. When the foreclosure of the bill of sale involved in this case was levied by the deputy sheriff, Mr. John Parish, I did go with him to the office of Mr. Abbot, and execute a forthcoming *Page 586 
bond, dated December 6, 1939, which he presents to me, and did at that time tell him that I expected to pay my indebtedness, and that I was undertaking to do so. Mr. Weeks came to me. I did not go to him. I was already able to finance the making of my crop for 1939 without his help. It was at his suggestion that I went to see Mr. Kilgore at the Bank of Stapleton. Mr. Kilgore first declined to make the loan. Later Mr. Weeks came to see me again, and told me he now had the matter arranged at the Bank of Stapleton, and that it would make me the loan and take up the Weeks' notes, and suggested that I go back again. I went back and Mr. Kilgore fixed up the papers involved in this litigation, and I signed them. Nothing was said between Mr. Kilgore and me about the details. Mr. Kilgore asked me if I could pay all of this amount in one year, and I told him no. It was about two weeks after I executed the papers at the Bank of Stapleton that I asked Mr. Kilgore about the old notes, and he told me he did not have them, and suggested that I see Mr. Weeks about them."
M. C. Barwick testified for the defendant: "Mr. McGahee came to me about this matter in the fall of 1939. I went to see Mr. W. E. Weeks and asked to see the older notes and bill of sale referred to in Mr. McGahee's testimony, and he declined to show them to me, referring me to the records in the court-house. I was trying to arrange some way for Mr. McGahee to finance this matter, and pay the Weeks what he owed them." The defendant introduced in evidence (1) a note for $1081, dated April 28, 1936, due September 15, 1936, bearing interest from maturity at 8 per cent. per annum, signed by A. C. McGahee, payable to W. E. Weeks, having a credit on the back, "9/16/36, paid on note $600;" a note for $1000, dated May 22, 1937, due September 15, 1937, bearing interest from date at 8 per cent. per annum, signed by A. C. McGahee, payable to C. A. Weeks; (3) a draft signed by A. C. McGahee, dated October 12, 1939, drawn on Lyon Lyon, Augusta, Georgia, $1045.22, payable to the Bank of Stapleton, marked paid by the Citizens Southern Bank, October 13, 1939.
J. C. Kilgore testified for the plaintiffs: "I am cashier of the Bank of Stapleton. In the spring of 1939 W. E. Weeks arranged with me for the Bank of Stapleton to lend to A. C. McGahee $1038.55 upon the security of the indorsement of W. E. Weeks and C. A. Weeks, and a bill of sale of the mules and crops of A. C. *Page 587 
McGahee, and the other personal property described in the bill of sale foreclosed on in this case. I was to take a note from A. C. McGahee for $1866, secured by the same bill of sale, both notes being due in the fall of 1939. Later Mr. McGahee came to the bank, and the matter was closed, as stated, by the execution of the two notes which are handed to me and the bill of sale which is handed to me. There was never any understanding between Mr. Weeks and me that the bank was to purchase the notes held by W. E. Weeks and C. A. Weeks. The bank was merely to take security for the amount of the 1939 loan to A. C. McGahee, and also for the amount of the notes of W. E. Weeks and C. A. Weeks. Mr. McGahee did ask me if Mr. Weeks left his older notes, payable to the Weeks, with me, and I told him that he did not. On October 12, 1939, Mr. McGahee did pay the Bank of Stapleton the note for $1038.55, and on October 16, 1939, the bank transferred the bill of sale to W. E. and C. A. Weeks. This was in accordance with the arrangement in the beginning between the bank and W. E. and C. A. Weeks. At the time that Mr. McGahee came into the bank to close the loan, March 27, 1939, and executed the notes and bill of sale, I explained the transaction to him, as I understood it, and the papers were fixed with him in accordance with my understanding of the transaction between him, the Weeks, and the bank. I did not tell Mr. McGahee that I was going to transfer the $1866 note to W. E. and C. A. Weeks. When Mr. McGahee later asked me about the old notes, I did not tell him that I had transferred the $1866 note to the Weeks."
W. E. Weeks testified: "In the spring of 1939 I held the note of A. C. McGahee for $1081, dated April 28, 1936, with a credit in the fall of 1936 of $600. This note was secured by Mr. McGahee's crop and mules. He ran off most of the crop, except the $600 that he paid me. My brother held his note for $1000, dated May 22, 1937, due that fall, but unsecured. I wanted to get security for both notes, particularly my brother's, which was unsecured. I went to McGahee and proposed to arrange at the Bank of Stapleton for him to be loaned $1000 to make his 1939 crop, to be secured by his crop and mules, and the other personal property in the bill of sale foreclosed on. I told him that I would arrange this if he would include in the security to the bank the amount due my brother and me. My purpose was to get security for my brother *Page 588 
on the other personal property. I did not have any idea of selling these notes to the Bank of Stapleton, and did not so suggest to Mr. McGahee in any way. Of course I knew, and he knew, that the bank would not buy these old notes, which were past due, and on which he had not paid anything for several years. I do not recall Mr. McGahee coming to me and asking for these old notes. The old notes and the old bill of sale which I held were in my possession, and have been in my possession all the while. I wanted to hold the old bill of sale because it was older on the mules, and might be better security on them for what was due me. Judge Barwick did come to me late one afternoon, after a funeral at Wrens, and asked to see these old notes. I told him that they were locked up in the safe in the old bank building, now occupied by the city for a city hall, and that they were closed up and I could not get to them. I told him he could see the bill of sale from the records at the court-house. He did not ask me anything about giving up or cancelling the old papers, he only asked to see them. It is possible that I miscalculated the interest on the older notes to me and my brother. I had another $100 note dated July 27, 1936, due on demand, signed by Mr. McGahee, on which $100 was paid September 16, 1936. All that I want is the correct amount of principal and interest due me and my brother on the two notes which have been introduced in evidence. The $100 note referred to has been paid, and should not be included in the calculation of the amount due me and my brother. I will not now surrender the old notes held by me and my brother, and the old bill of sale, and I decline to answer counsel's question as to which I am holding against Mr. McGahee."
The plaintiffs introduced in evidence the following: (1) note signed by A. C. McGahee, payable to the Bank of Stapleton, $1038.55 principal, dated March 27, 1939, due September 15, 1939, bearing interest from maturity at 7 per cent. per annum, and having the blank indorsement of C. A. Weeks and W. E. Weeks, and a transfer, without recourse, from the Bank of Stapleton to W. E. and C. A. Weeks, dated October 16, 1939; (2) note signed by A. C. McGahee, for $1866 principal, dated March 27, 1939, due September 25, 1939, bearing interest from maturity at 8 per cent. per annum, payable to the Bank of Stapleton, and having on the back a transfer, without recourse, from the Bank *Page 589 
of Stapleton to W. E. and C. A. Weeks, dated March 27, 1939; (3) the bill of sale executed by A. C. McGahee, foreclosed in this case, dated March 27, 1939, securing the notes listed above, and covering the crops, mules, and other personalty therein shown, recorded, and having on the back a transfer and conveyance of the title to the property therein described, from the Bank of Stapleton to W. E. and C. A. Weeks, without recourse, dated October 16, 1939; note for $100, signed by A. C. McGahee dated July 27, 1936, due on demand, payable to W. E. Weeks, bearing interest from date at 8 per cent. per annum, and having on the back "9/16/36, paid $100."
The jury found for the defendant. A motion for new trial, on the general grounds, and on the ground that the court erred in charging the jury that the burden of proof was on the plaintiffs, was overruled, and the plaintiffs excepted.
1. It was not error for the court to charge the jury that the burden of proof was on the plaintiffs, under the circumstances above related. The defendant withdrew his admission of a prima facie case, and waived his contention for the opening and concluding argument. Before the arguments the court announced that the plaintiffs were entitled to the opening and conclusion, and they will be deemed to have acquiesced in the ruling which they invoked, and to have taken advantage of it, in the absence of a showing to the contrary. This being true, they are estopped to complain of the charge.
2. The $1866 note was transferred by the bank to the plaintiffs on the day it was executed. Its validity depends upon a contract by McGahee with the plaintiffs or with the bank furnishing a consideration for its execution. Under McGahee's testimony, if there was any contract at all for the signing of this note, it was with the bank acting through W. E. Weeks. According to the testimony of McGahee, the cashier of the bank, and W. E. Weeks, the old notes were not taken up by the bank. The cashier and Weeks swore that the bank never did agree to do so. If there was no agreement on the part of the bank to take up the old notes, there was no consideration for the execution of the $1866 note to the bank, for *Page 590 
the simple reason that McGahee did not owe the bank that money. The jury believed McGahee's version of the transactions and were authorized to find that the plaintiffs knew when the note was transferred to them that it was without consideration. The same is true as to the bill of sale. It is of course true that if the jury decided that the situation was as represented by the cashier and Mr. Weeks, the contract would have been between the plaintiffs and McGahee, and it would have been as if McGahee had executed the note and bill of sale to the plaintiffs, but under the evidence as found by the jury to be true there was no consideration for the $1866 note. Consequently the bank could transfer nothing when it had nothing. There was no basis for a holding that McGahee ratified a fraud practiced on him by the bank. The evidence showed that McGahee did not know of the transfer of the note by the bank. There was no evidence demanding a finding that McGahee knew that the bank did not agree to take up the old notes, or that such an arrangement had not been made between the bank and the plaintiffs. The evidence authorized the verdict, and the court did not err in overruling the motion for new trial.
Judgment affirmed. Stephens, P. J., and Sutton, J.,concur.